# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB LANCE | : CIVIL ACTION |
| v. | : NO. 18-4933 |
| MIDLAND CREDIT MANAGEMENT INC., *et al.* | : |

## MEMORANDUM

**KEARNEY, J.**  **March 22, 2019**

Jacob Lance signed a credit card account agreement with Synchrony Bank. The agreement included a mandatory arbitration clause and class action waiver. Mr. Lance also agreed the bank could sell its rights or duties under the agreement or the "account", including rights to payments. Mr. Lance defaulted on his payments. The bank sold "accounts" (including Mr. Lance's account) to Midland Funding LLC. The bank did not specifically sell its "rights or duties" to Midland Funding. Upon obtaining the accounts, including rights to payments, Midland Funding's agent sent Mr. Lance a letter seeking to collect the credit card debt.

Mr. Lance now sues Midland Funding and its agent claiming the collection letter violates the Fair Debt Collection Practices Act. Midland moves to compel arbitration under the Federal Arbitration Act arguing it purchased his "account" which automatically includes the bank's rights to compel arbitration. Mr. Lance concedes he agreed to arbitration with the bank. He disputes agreeing to anyone else being allowed to compel arbitration. He also argues the assignment does not include the bank's rights to arbitrate. We disagree with him in part. He agreed to arbitrate his disputes with the bank or whomever the bank sold its rights. But we have no basis to find, as a matter of contract law, the bank sold its rights to arbitrate. It sold accounts. Absent evidence it also sold the rights to arbitrate, Midland may not compel arbitration.

This is an issue of law requiring we initially interpret the use of the term "account" in the sale documents from the bank to Midland. Midland fails to provide us with law (including which law may apply) or evidence which could allow us to find it purchased the right to compel arbitration. After review of the presently undisputed facts, we today hold Synchrony Bank did not assign the right to arbitrate to Midland Funding subject to further argument and possible evidence clarifying possible ambiguity in the use of the term "account" in the assignment.

**I.     Undisputed facts.**

Jacob Lance opened a CareCredit Card account with Synchrony Bank on December 12, 2016[1] by signing a CareCredit Card Account Agreement ("Agreement").[2] Mr. Lance used the account for purchases but did not make payments.[3] Mr. Lance alleges the account is a debt incurred for personal, family or household purposes.[4]

The Agreement contained three provisions material to today's issue: (1) an assignment clause; (2) an arbitration clause; and (3) a class action waiver.[5]

### *The assignment clause.*

The assignment clause provides "We may sell, assign or transfer any or all of our rights or duties under this Agreement *or* your account, including our rights to payments. We do not have to give you prior notice of such action. You may not sell, assign or transfer any of your rights or duties under this Agreement or your account."[6]

### *The arbitration clause.*

The arbitration clause provides, in bolded, capitalized letters "Please read this section carefully. If you do not reject it, ***this section will apply to your account***, and most disputes between you and us will be subject to individual arbitration. This means that: (1) neither a court nor a jury

will resolve any such dispute; (2) you will not be able to participate in a class action or similar proceeding; (3) less information will be available; and (4) appeal rights will be limited."[7]

The arbitration clause described the type of claims subject to arbitration including, *inter alia*: "If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user *of your account*, and us, our affiliates, agents and/or providers that accept the card or program sponsors it if relates to *your account*, except as noted below" and "Notwithstanding any other language in this section, only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof (including, without limitation, the next paragraph of this section and/or sentence). However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide."[8]

### *Class action waiver.*

In bolded, capitalized letters, the Agreement provides "No Class Actions" stating "You agree not to participate in a class, representative or private attorney general action against us in court or arbitration. Also, you may not bring claims against us on behalf of any accountholder who is not a [sic] accountholder on your account, and you agree that only accountholders on your account may be joined in a single arbitration with any claim you have."[9]

The Agreement additionally provides the "Arbitration section" is governed by the Federal Arbitration Act and Utah law applies "to the extent state law is relevant under the FAA."[10] The Agreement further provides "[t]he arbitrator's decision will be final and binding, except for any appeal rights under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award."[11]

3

### *Bank defaults Mr. Lance's account and then sells its "Accounts" to Midland.*

On September 20, 2017, Synchrony Bank charged off Mr. Lance's account with a balance of $1,065.78.[12] One month later, in October 2017, Synchrony Bank sold several accounts, including Mr. Lance's account, to Midland Funding LLC ("Midland Funding").[13] Midland Credit Management, Inc. ("Midland Credit") services the account for Midland Funding.[14]

On April 25, 2018, Midland Credit sent Mr. Lance a "collection letter" for the balance on the account.[15] Mr. Lance alleges the letter is false, deceptive, and misleading because Midland Credit "place[d] … ambiguous language" regarding three "discount" payment options "resulting in multiple interpretations."[16] Mr. Lance alleges the third option is ambiguous "as to whether this is a third settlement option or a path to full payment," contending the third option "appears to be a path to full payment, but after reading the statement that all three are discount options, the consumer would reasonably believe that the item is a discount."[17] Mr. Lance contends this is a material ambiguity "because it directly affects the consumer's choice to pay the debt."[18]

Mr. Lance further challenges a banner on the collection letter stating "We can't change the past, but we can help with your future."[19] Mr. Lance alleges this language implies by making a payment on the debt, his "future will benefit" even though Midland Credit "does not intend any benefit by this statement other than refraining from demanding immediate payment."[20] Mr. Lance alleges this statement leads the consumer to believe his future credit score will be improved and is false.[21]

Mr. Lance seeks to certify a class of all Pennsylvania consumers who received the same letter from Midland Credit "concerning debts for Synchrony Bank/Care Credit used primarily for personal, household, or family purposes within one year prior to the filing" of the complaint for violations of the Fair Debt Collection Practices Act (the "Act").[22]

4

## II.   Analysis

Midland moves to compel individual arbitration arguing (1) the Federal Arbitration Act ("FAA") mandates enforcement of the arbitration clause; (2) the arbitration clause is valid and enforceable; (3) Mr. Lance's claims are within the scope of the arbitration clause; (4) the arbitration clause extends to Midland Funding as the assignee of the Agreement; and (5) Mr. Lance must arbitrate his claims individually because he waived his right to a class action.[23]

Mr. Lance does not contest the validity of the arbitration clause and class waiver clause in the Agreement with Synchrony Bank. We are not addressing questions of fact as to whether Mr. Lance knew he signed an agreement with these important clauses. He is not disputing Midland's right to seek payment. He instead argues Midland cannot enforce the arbitration and class waiver clauses because the assignment involved only the Account and the right to collect, not the rights to enforce arbitration. If we disagree with him, he argues his claims are outside the scope of the clause.

### A. Given undisputed facts, we review the motion to compel under Rule 12(b)(6).

Before addressing the parties' arguments, we must determine whether we review the motion to compel arbitration under Federal Rule of Civil Procedure 12(b)(6) or Rule 56. We are guided by our Court of Appeals' decision in *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*[24] In *Guidotti*, the Court of Appeals explained we should apply one of two standards to motions to compel arbitration: "when it is apparent, based on the face of the complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay."[25] "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with

5

additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question."[26]

Midland is silent on the standard, but asks in its reply brief for discovery "to the extent [we] conclude [Mr. Lance's] argument raises sufficient doubt as to the arbitrability of this case."[27] Mr. Lance contends motions to compel arbitration are reviewed under the summary judgment standard of Rule 56, but he does not cite our Court of Appeals' *Guidotti* analysis.[28]

Although not specifically mentioned in his complaint, Mr. Lance's claims arise from the Agreement with Synchrony Bank. The challenged "collection letter" attached to the complaint refers to Synchrony Bank as the original creditor, refers to Mr. Lance's account number, and Midland Funding as the current owner of the account. Mr. Lance does not dispute he opened the account with Synchrony Bank or entered into an Agreement with it containing the arbitration clause. He does not contest the validity of the Agreement or contest in any way the charged-off amount. Instead, Mr. Lance argues he did not agree to arbitrate with Midland Funding because Synchrony Bank did not assign its right to arbitration to Midland Funding. He continues to argue even if Midland Funding could enforce the arbitration clause, Mr. Lance's claims under the Act are outside the scope of the arbitration clause.

Mr. Lance cites only to the language of the Agreement and the Bill of Sale between Synchrony Bank and Midland Funding, arguing those documents support his position the Agreement is unenforceable. He does not ask for discovery. Mr. Lance concedes there is an authentic arbitration provision but it is unenforceable by Midland Funding. The issue requires we interpret the assignment language between Synchrony Bank and Midland Funding. We accordingly apply the Rule 12(b)(6) standard to Defendants' Motion to compel.[29]

6

When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant."[30] "The test in reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6) is whether, under any 'plausible' reading of the pleadings, the plaintiff would be entitled to relief."[31]

### B. There is no legal basis to now find Midland purchased Synchrony Bank's rights to compel arbitration.

Section 1 of the FAA "reflects the 'national policy favoring [arbitration] and place[s] arbitration agreements on equal footing with all other contracts.'"[32] Section 2 of the FAA provides "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[33] Section 3 of the FAA requires we stay an action "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under" an agreement in writing to arbitrate "until such arbitration has been had in accordance with the terms of the agreement."[34] Section 4 of the FAA provides "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement."[35]

Before compelling an unwilling party to arbitrate, we must determine whether "(1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement."[36] When making this determination, "there is a presumption in favor of arbitrability" and we "look to ordinary state law principles of contract formation."[37]

7

Midland argues the express terms of the Agreement require mandatory individual arbitration, the arbitration clause is valid and enforceable, and the arbitration clause extends to Midland Funding as the assignee of the Agreement. Mr. Lance does not appear to contest the validity of an arbitration agreement with Synchrony Bank. He argues he did not agree to arbitrate *with Midland Funding*, and Synchrony Bank did not assign the right to arbitration to Midland Funding. Thus, our analysis focuses on whether Synchrony Bank assigned the right to arbitration to Midland Funding.

### *Did Mr. Lance agree to arbitrate with Midland Funding?*

Under the Agreement, claims subject to arbitration are defined as "any dispute or claim," and further provide "[*i*]*f either you or we* make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or providers that accept the card or program sponsors if it relates to your account, except as noted below."[38] The Agreement defines "you" as the "accountholder" and defines the terms "'we,' 'us' or 'our'" as Synchrony Bank.[39]

Mr. Lance does not contest he is included in the term "you"; he argues only Synchrony Bank is included in the term "we, us or our" and neither the arbitration clause itself nor the Agreement provide any mention of "assignees" or allows assignees to make a demand for arbitration. Midland argues the Agreement contains a broad assignment clause providing Synchrony Bank "may sell, assign or transfer any or all of our rights or duties under this Agreement or your account, including our rights to payments. ...."[40]

Mr. Lance argues the United States Court of Appeals for the Tenth Circuit recently analyzed a similar arbitration provision and held a non-party to an agreement could not invoke arbitration. In *Cavlovic v. J.C. Penney Corp.*, plaintiff brought a class action complaint against

8

J.C. Penney alleging violations of state consumer protection laws.[41] J.C. Penney moved to compel arbitration. J.C. Penney argued a credit card agreement between plaintiff and GE Capital Retail Bank, the card issuer of a J.C. Penney-branded credit card, required plaintiff to arbitrate her claims.[42] The arbitration clause in the agreement between plaintiff and GE Capital Retail provided "[i]f either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you and any other user of your account, and us, our affiliates, agents and/or J.C. Penney Corporation, Inc. if it relates to your account, except as noted below ...."[43]

The court of appeals, affirming the district court, held the arbitration provision in the agreement between plaintiff and GE Capital did not provide for a third-party demand for arbitration as evidenced by the parties' intent from the agreement only "you" (plaintiff) or "we" (GE Capital) can demand arbitration.[44] *Cavlovic* is distinguishable because, as the court noted, J.C. Penney is not a party to the agreement. Here, Midland argues it is a party to the Agreement by virtue of Synchrony Bank's assignment and thus "stands in the shoes" of Synchrony Bank which, as a party to the Agreement, has the right to demand arbitration of Mr. Lance. We find *Cavlovic* distinguishable on its facts and not relevant to our analysis here.

Mr. Lance cites a decision from the United States District Court for the District of New Jersey granting Midland Credit's motion to compel arbitration under a cardholder agreement between plaintiff and Credit One Bank, N.A.[45] In *Harris*, plaintiff's cardholder agreement defined Credit One to include "its successors or assigns." Credit One later sold plaintiff's account to another entity which in turn sold the account to Midland Funding. Midland Funding referred to matter to its servicer, Midland Credit, which attempted to collect on plaintiff's outstanding Credit One account. Plaintiff alleged Midland violated the Act and Midland Credit moved for arbitration.

9

The district court found the language of the agreement defined Credit One to include its successors and assigns and included a provision all claims subject to arbitration "include not only Claims that related directly to us, a parent company, affiliated company, and any predecessors and successors."[46] The court concluded Midland Funding "stepped into the shoes of Credit One and is entitled to enforce the arbitration agreement" and, because Midland Credit is Midland's Funding affiliate, it is also entitled to enforce the arbitration agreement.[47]

Mr. Lance argues *Harris* is distinguishable because his arbitration clause does not provide for assignees of Synchrony Bank to invoke arbitration. Midland argues the omission of "successors and assigns" from the Agreement is "irrelevant given the broad assignment provision in the Agreement" allowing Synchrony to "sell, assign or transfer any or all of our rights or duties under this Agreement or your account ...."

We agree with Midland. Mr. Lance agreed Synchrony Bank could sell its rights. This agreement includes the right for the purchaser of this right to enforce it. The rights include, under any definition, the right to arbitration under the agreement.

### *Did Midland buy Synchrony Bank's right to arbitration when it bought Accounts?*

Mr. Lance alternatively argues there are no documents to support Midland's argument of assuming *all* rights under the Agreement, including the right to invoke arbitration. Mr. Lance argues Synchrony Bank sold only his account and the right to collect on the account, *not* an assignment of the right to arbitration, pointing to the Bill of Sale between Synchrony Bank and Midland Funding.

The Bill of Sale confirming Synchrony's assignment of Mr. Lance's "Account" to Midland Funding is a two paragraph document providing: "For value received and in further consideration of the mutual covenants and conditions set forth in the Forward Flow Accounts Purchase

10

Agreement (the "Agreement"), dated as of the 4th day of August, 2017 by and between Synchrony Bank ... (collectively "Seller") and Midland Funding LLC ("Buyer"), Seller hereby transfers, sells, conveys, grants, and delivers to Buyer, its successors and assigns, without recourse except as set forth in the Agreement, the Accounts set forth in the Notification Files, delivered by Seller to Buyer on October 22, 2017, and as further described in the Agreement. Capitalized terms not defined herein shall have the definition ascribed in the Agreement."[48] Notably, "Accounts" is capitalized, not defined in the Bill of Sale, so we should turn to the "Forward Flow Accounts Purchase Agreement" for its definition.

Midland asks us to interpret "Accounts" as including the right to compel arbitration. Midland has not provided the "Forward Flow Accounts Purchase Agreement" or the "Notification Files" referenced in the Bill of Sale or a document defining "Accounts." We have only Mr. Mulcahy's Affidavit swearing Mr. Lance's account is included within the portfolio of accounts Synchrony Bank sold to Midland Funding.[49] We do not challenge his sworn statement. But the question is different. We agree Midland Funding bought Mr. Lance's account. The question is whether it bought the right to arbitration.

On its face, one may conclude "Account" covers the rights to arbitration as a matter of common sense. But we face an Agreement and Bill of Sale which possibly uses the term "account" differently. "Account" is not defined in the Agreement or the Bill of Sale. "Account" is defined in the "Forward Flow Accounts Purchase Agreement." Mr. Lance contends the Bill of Sale did *not* convey the right to demand arbitration, but only sold the "Account" and right to collect on the account as a receivable. Midland argues the Bill of Sale "clearly refers to" the "Forward Flow **Accounts** Purchase Agreement" – a document Midland Funding fails to provide us – and states Synchrony Bank assigned to Midland Funding "the **Accounts** as set forth in the Notification Files"

11

– another document we do not have in the record. Midland argues this shows Synchrony Bank assigned accounts, not receivables.

Mr. Lance cites *Garcia v. Midland Funding, LLC*, a 2017 decision from the United States District Court for the District of New Jersey to support his argument Synchrony Bank sold only its receivables, not its right to arbitration.[50] He argues Synchrony Bank's sale of "accounts" like its sale of "receivables" in *Garcia* proves it can sell certain rights but not all. In *Garcia*, the plaintiff brought a class action against Midland Funding for alleged violations of the Act. Midland Funding alleged plaintiff owed money on a Lowe's credit card account from Synchrony Bank. In its motion to compel arbitration, Midland Funding attached an affidavit from a representative of Synchrony Bank swearing plaintiff's original account agreement contained an arbitration provision. Midland Funding argued a "Forward Flow Receivables Purchase Agreement" fully conveyed Synchrony Bank's ownership of plaintiff's credit account to it, acquiring all rights to plaintiff's account including the right to arbitration.[51] In response, plaintiff argued the Forward Flow Receivables Purchase Agreement conveyed only the accounts receivables, not the entire credit card accounts or the accounts agreement, and Synchrony Bank did not transfer all its rights associated with the account.[52]

The district court found the agreement between Synchrony Bank and Midland Funding in *Garcia* "did not clearly convey the right to demand individual arbitration."[53] The district court focused on the language of the agreement providing separate definitions for "account" and "receivable" and found Midland Funding acquired the right to collect receivables but the agreement, on its face, did not convey the broad right to compel arbitration for "any dispute or claim" relating to plaintiff's account and denied Midland Funding's motion to compel arbitration.[54]

12

Mr. Lance argues Midland, like it did in *Garcia*, attempts to invoke an arbitration agreement without having the right to do so and points to Midland's failure to provide the relevant Purchase and Sale Agreement between it and Synchrony Bank. Without this document, Mr. Lance argues, "the current acquisition rights are unclear."[55] Mr. Lance further argues the Bill of Sale and Affidavit of Sale attached to Midland's motion do not, on their face, convey the right to arbitration.

Midland distinguishes *Garcia* by arguing the plain language of the agreement between it and Synchrony Bank showed it only acquired "receivables" rather than "accounts" making *Garcia* factually inapposite. Midland argues here the Bill of Sale "clearly refers" to a "Forward Flow **Accounts** Purchase Agreement" assigning to it "the **Accounts**" in the "Notification files." Midland also points to the Affidavit of Sale of Account by Original Creditor attached to Mr. Mulcahy's Affidavit.[56] In the Affidavit, Paola Medina, Media Representative of Synchrony Bank, swears on October 22, 2017, Synchrony Bank "sold a pool of charge-off accounts (the Accounts) by a Purchase and Sale Agreement and a Bill of Sale to Midland Funding LLC" and, as part of the "sale of Accounts, electronic records and other records were transferred on individual Accounts to the debt buyer."[57]

Again Midland did not provide us with the "Forward Flow Accounts Purchase Agreement," the "Notification Files," or the "Purchase and Sale Agreement" referred to by Ms. Medina's Affidavit. The court in *Garcia* appears to have had in the record the "Forward Flow Receivables Purchase Agreement."

Midland seems to miss the argument. We have no document defining "Account" as the term is used in the Bill of Sale and cannot determine whether Synchrony Bank intended to convey all of its rights under its Agreement with Mr. Lance, including the right to arbitration. We have only the Bill of Sale stating Synchrony Bank "hereby transfers, sells, conveys, grants, and delivers

13

to [Midland Funding], its successors and assigns, without recourse except as set forth in the [Forward Flow Accounts Purchase Agreement], the Accounts as set forth in the Notification Files ...."

The absence of a definition for "Account" in the Bill of Sale is highlighted by the use of the term "account" in the Agreement signed by Mr. Lance. Mr. Lance agreed Synchrony Bank "may sell, assign or transfer any or all of our rights or duties under this Agreement *or* your account, including our rights to payments ...." By separating "rights" from "account", Synchrony Bank may be describing two different assets.

Synchrony Bank and Midland Funding could have clearly stated the assignment intended to "sell, assign or transfer" its "rights or duties" including the right to arbitration *and* Mr. Lance's account, but the Bill of Sale does not include this straightforward language. Perhaps such language is contained in the "Forward Flow Accounts Purchase Agreement." Midland simply concludes, without citation to case law, including Utah law as applicable under the Agreement, because Synchrony Bank sold the "Account" to Midland Funding, it acquired all rights under the Agreement, including the right to arbitration.

The ambiguity is deepened by other language in the Agreement signed by Mr. Lance. The arbitration clause warns Mr. Lance if he does not reject the arbitration clause *"this section will apply to your account"* and description of the type of claims subject to arbitration include, *inter alia*, "If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user *of your account*, and us, our affiliates, agents and/or providers that accept the card or program sponsors it if relates to *your account*, except as noted below." This language, coupled with the language of the assignment clause, deepens an ambiguity as to whether Synchrony Bank's right to arbitration is included in the "Accounts" it sold to Midland Funding.

14

On the present record, we cannot find the word "Account" in the Bill of Sale between Synchrony Bank and Midland Funding automatically includes all "rights and duties" under the Agreement with Mr. Lance. We will extend discovery to allow the parties to explore this issue which presently appears, at best, to be ambiguous. But as Midland has yet to show its assigned rights include Mr. Lance's admitted agreement to arbitrate with Synchrony Bank or its assignee, we cannot today compel arbitration.

### III. Conclusion

Mr. Lance admittedly agreed Synchrony Bank could sell all of its "rights and duties" and his account. Mr. Lance admittedly agreed to arbitrate a dispute with Synchrony Bank and, if Synchrony Bank sold all of its "rights", to arbitrate a dispute with the purchaser of this right. But we have no basis today to find Synchrony Bank sold its "rights", including the right to arbitrate, when it sold its "Accounts" to Midland Funding in a Bill of Sale. We are not reviewing a question of whether Mr. Lance agreed to arbitrate. We are instead reviewing whether Synchrony Bank's assignment of its "Accounts" includes the separate "rights" to arbitrate. Midland needs to show us what it purchased. As of today, it has not done so. We will not simply presume the word "Accounts" includes "rights", including the right to compel arbitration, when Synchrony Bank used both terms in describing its ability to assign both "rights" and "Accounts."

---

[1] Stipulation of Facts at ¶ 4 (ECF Doc. No. 13).

[2] Affidavit of Joline White at ¶ 6 (ECF Doc. No. 14-2).

[3] Affidavit of Joline White at ¶ 7 (ECF Doc. No. 14-2); Affidavit of Sean Mulcahy at ¶ 13 (ECF Doc. No. 14-3).

[4] Complaint at ¶ 8 (ECF Doc. No. 1).

[5] ECF Doc. No. 14-2 at 7. The Court uses the pagination assigned to the document by the CM/ECF docketing system.

[6] *Id.* (emphasis supplied).

[7] *Id.* (emphasis supplied).

[8] *Id.* (emphasis supplied).

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] Stipulation of Facts at ¶ 6 (ECF Doc. No. 13).

[13] Affidavit of Joline White at ¶ 10 (ECF Doc. No. 14-2); Affidavit of Sean Mulcahy at ¶¶ 3, 6 (ECF Doc. No. 14-3).

[14] Affidavit of Sean Mulcahy at ¶ 3 (ECF Doc. No. 14-3); Stipulation of Facts at ¶ 7 (ECF Doc. No. 13). Mr. Lance alleges Midland Funding is the parent of Midland Credit, both are debt collectors, and Midland Funding is vicariously liable for Midland Credit's collection letter. Complaint at ¶ 21 (ECF Doc. No. 1). We generally refer to Midland Funding and Midland Credit collectively as "Midland."

[15] Complaint at ¶¶ 7, 10 (ECF Doc. No. 1).

[16] *Id.* at ¶¶ 9-20.

[17] *Id.* at ¶ 12.

[18] *Id.* at ¶ 13.

[19] *Id.* at ¶ 14.

[20] *Id.* at ¶ 15.

[21] *Id.* at ¶¶ 16-20.

[22] 15 U.S.C. § 1692 *et seq.*

[23] ECF Doc. No. 14-1.

[24] 716 F.3d 764 (3d Cir. 2013).

<sup>25</sup> *Id.* at 776 (alterations and citation omitted).

<sup>26</sup> *Id.* (alternations omitted).

<sup>27</sup> ECF Doc. No. 14-1; ECF Doc. No. 18 at 7.

<sup>28</sup> ECF Doc. No. 17. The Midland Defendants filed a reply brief, but do not respond to Mr. Lance's assertion a Rule 56 standard applies. *See* ECF Doc. No. 18.

<sup>29</sup> *Brown v. Firstsource Advantage, LLC*, No. 17-5760, 2019 WL 568935, *1-*2 (E.D. Pa. Feb. 12, 2019); *Silfee v. Auto. Data Processing, Inc.*, 696 F.App'x 576, 578 (3d Cir. 2017).

<sup>30</sup> *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)).

<sup>31</sup> *Guidotti*, 716 F.3d at 772 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

<sup>32</sup> *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018) (quoting *Hall St. Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008)).

<sup>33</sup> 9 U.S.C. § 2.

<sup>34</sup> *Id.* at § 3.

<sup>35</sup> *Id.* at § 4. Our Court of Appeals' recent decision in *Egan v. Live Nation Worldwide, Inc.*, No. 18-1794, 2019 WL 1057410 (3d Cir. Mar. 6, 2019) is helpful in distinguishing this dispute over language in an assignment clause compared to a dispute over whether the parties agreed to arbitrate. In *Egan*, the parties disputed whether defendant's website contained an arbitration provision and disputed the weight of other evidence including the authenticity of a document raised *sua sponte* by the district court. Applying a summary judgment standard given the disputed facts, the district court denied the motion to compel arbitration because defendant had not met its burden to prove the parties agreed to arbitration. Our Court of Appeals vacated the district court's denial of defendant's motion to compel arbitration finding factual disputes over the existence of an arbitration agreement and remanded it for a trial on whether the parties agreed to arbitrate. We do not have the same situation here. Mr. Lance does not dispute his Agreement contains an arbitration clause; he disputes whether Synchrony Bank assigned its rights to arbitration to Midland Funding.

<sup>36</sup> *ACE Am. Ins. Co. v. Guerriero*, 738 F.App'x 72, 77 (3d Cir. 2018) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 523 (3d Cir. 2009)). Because we cannot determine whether Synchrony Bank assigned its rights to arbitration, we need not address the second question.

<sup>37</sup> *Clymer v. Jetro Cash and Carry Enter.*, 334 F.Supp. 3d 683, 690 (E.D. Pa. 2018) (citing *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009); *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003)). Here, the Agreement between Mr. Lance and Synchrony Bank contains a

choice of law provision applying Utah law "to the extent state law is relevant under the FAA." *See* ECF Doc. No. 14-2 at 7.

[38] ECF Doc. No. 14-2 at 7 (emphasis added).

[39] *Id.*

[40] *Id.*

[41] 884 F.3d 1051 (10th Cir. 2018).

[42] *Id.* at 1054.

[43] *Id.* at 1057.

[44] *Id.* at 1057-58.

[45] *Harris v. Midland Credit Mgmt.*, No. 15-4453, 2016 WL 475349 (D.N.J. Feb. 8, 2016).

[46] *Id.* at * 2.

[47] *Id.*

[48] ECF Doc. No. 14-3 at 7. The Court uses the pagination assigned to the document by the CM/ECF docketing system. The Bill of Sale is attached to the Affidavit of Sean Mulcahy supporting Midland's Motion. *See* ECF Doc. No. 14-3.

[49] *See* Mulcahy Affidavit at ¶ 10, ECF Doc. No. 14-3 at 3.

[50] No. 15-6119, 2017 WL 1807563 (D.N.J. May 5, 2017).

[51] *Id.* at *3.

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] ECF Doc. No. 17 at 5.

[56] ECF Doc. No. 14-3 at 9.

[57] *Id.*